# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 18-0043V
### Filed: February 20, 2020
PUBLISHED

|  |  |
|---|---|
| DOROTHY SMITH,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Special Master Horner<br><br>Interim Attorneys' Fees and Costs;<br>Excessive Travel Costs; Reasonable<br>Rates; Vague Billing; Excessive<br>Billing; Expert Costs |

*David Neal Calvillo, Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C., Houston, TX, for petitioner.*
*Daniel A. Principato, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On September 16, 2019, petitioner moved for an award of interim attorneys' fees and costs.  (ECF No. 24.)  In response, respondent deferred to the special master regarding the amount and appropriateness of an award of interim fees and costs.  (ECF No. 25.)  Respondent is satisfied however, that the statutory requirements for such an award have been met in this case.  (*Id.* at 2.)  For the reasons discussed below, I award petitioner interim attorneys' fees and costs in the reduced amount of $63,486.39.

## I.      Procedural History

Petitioner filed this claim on January 8, 2018 alleging that her diagnosis of transverse myelitis was caused by the influenza vaccination she received on January 19, 2016.  (ECF No. 1.)  This case was originally assigned to Special Master Millman.  (ECF No. 4.)  Petitioner filed a Statement of Completion on March 7, 2018 (ECF No. 7) and after a status conference before Special Master Millman, respondent was ordered

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

to file a status report on his position.  (ECF No. 8.)  Respondent filed a status report on November 19, 2018, indicating that he intended to defend the case.  (ECF No. 15.)  Respondent also requested additional medical records which were filed on April 17, 2019.  (ECF Nos. 18, 19.)

Initially, petitioner filed a brief, one-page, expert report (by Jack Burks, M.D.) with her petition.  (ECF No. 1-7; Ex. 5.)  After respondent filed his responsive Rule 4 report on March 5, 2019, petitioner filed a supplemental expert report responding to certain points raised by respondent.  (ECF Nos. 16, 19.)  Subsequently, upon Special Master Millman's retirement, this case was reassigned to my docket on June 5, 2019.  (ECF No. 21.)

Respondent filed his responsive expert report on July 24, 2019.  (ECF No. 23.)  Thereafter, I provided petitioner an opportunity to file a further report responding to respondent's expert. Subsequently, petitioner then filed this Motion for Interim Attorneys' Fees and Costs on September 16, 2019, followed by an expert report from a newly retained expert (Dr. Levy) on October 16, 2019.  (ECF Nos. 24, 26.)  Petitioner explained that her original expert had retired.  (ECF No. 27.)

Respondent filed his response to petitioner's motion on September 30, 2019 (ECF No. 25); however, upon initial review I determined that petitioner had not provided documentation supporting her request for $27,522.55 in litigation costs and ordered her to do so.  (ECF No. 29.)  On December 18, 2019, petitioner filed a Supplemental Motion for Interim Attorneys' Fees and Costs with additional documentation supporting her request for attorneys' costs.[2]  (ECF No. 32.)

This motion is now ripe for resolution.

## II.     An Award of Interim Fees and Costs is Reasonable

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs."  § 300aa–15(e)(1)(A)–(B).  Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).  In his response, respondent indicated that he is satisfied this statutory standard has been met in this case.  (ECF No. 25, p. 2.)  I agree.

Additionally, the Federal Circuit has concluded that interim fee awards are permissible and appropriate under the Vaccine Act.  *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372 (Fed. Cir. 2010); *Avera*, 515 F.3d at 1352.  In *Avera*, the Federal

---

[2] It appears that the supplemental documentation may include some receipts which were not associated with any of the disbursements identified by counsel's billing records.  (ECF No. 24-4, pp. 12-13.)  Only costs identified as disbursements in the billing records submitted with the original motion have been considered for reimbursement in this decision.

Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Id*.  In *Shaw*, the Federal Circuit clarified that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees."  609 F.3d at 1375.

More specifically, petitioner cites the prior decision *Chinea v. Secretary of Health & Human Services*, No. 15-95V, 2019 WL 3206829 (Fed. Cl. Spec. Mstr. June 11, 2019).  In that decision, the special master observed three factors that have been considered when exercising discretion to award interim attorney's fees include: (1) whether the fee request exceeds $30,000, (2) whether the expert costs exceed $15,000, and (3) whether the case has been pending for over 18 months.  *Chinea*, 2019 WL 3206829, at *2 (citing *Knorr v. Sec'y of Health & Human Servs.*, No. 15-1169V, 2017 WL 2461375 (Fed. Cl. Spec. Mstr. Apr. 17, 2017)).

In light of the above, I exercise my discretion to allow an award of interim fees and costs.  This petition was filed on January 8, 2018, about eighteen months before the filing of the motion for interim fees.  (ECF No. 1.)  In that time, petitioner filed an expert report and responded to discovery.  The total sought for fees and costs exceed the $30,000.00 and $15,000.00 figures cited in *Chinea*.  Moreover, respondent has not objected, but instead deferred to my discretion as to whether the standard for an interim award of fees and costs is met in this case.  (ECF No. 25, p. 2.)

Petitioner is advised, however, that multiple requests for interim attorneys' fees and costs within the same case are disfavored.  *See, e.g.*, *Patel v. Sec'y of Health & Human Servs.*, No. 16-848V, 2019 WL 2296818, at n.3 (Fed. Cl. Spec. Mstr. Apr. 11, 2019) (one special master noting "it is not my practice to allow multiple interim fee awards of fees and costs . . . and [petitioner] should therefore refrain from requesting another interim award again until he case fully concludes.").  Accordingly, I will not entertain a second interim fee request absent compelling circumstances.  *See, e.g.*, *Kottenstette v. Sec'y of Health & Human Servs.*, No. 15-1016V, 2019 WL 5709372, at *2 (Fed. Cl. Spec. Mstr. Oct. 11, 2019) (the undersigned granting a second interim fee award where the Court of Federal Claims entertained a stay of respondent's motion for review).

## III.    Legal Standard for Determining Reasonable Fees and Costs

The determination of the amount of reasonable attorneys' fees is within the special master's discretion.  *See, e.g. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993).  Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs."  *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991).  Moreover, special masters are entitled to rely on their own experience and understanding of the issues raised.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988 F.2d 131 (Fed. Cir. 1993) (per curiam).  Special Masters use the lodestar approach to determine what constitutes reasonable attorneys' fees under the Vaccine Act.  *Avera v.*

*Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008).  The lodestar approach involves first determining "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Avera*, 515 F.3d at 1347–48 *(*quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Once a court makes that initial calculation, it may then make an upward or downward departure to the fee award based on other specific findings.  *Id*.

Petitioner "bears the burden of establishing the hours expended" and the reasonableness of the requested fee award.  *Wasson,* 24 Cl. Ct. at 484.  Notwithstanding that respondent has not raised any specific objections to petitioner's fee application, "the Special Master has an independent responsibility to satisfy himself that the fee award is appropriate and [is] not limited to endorsing or rejecting respondent's critique."  *Duncan v. Sec'y of Health & Human Servs.*, No. 99-455V, 2008 WL 4743493 (Fed. Cl. 2008); *see also McIntosh v. Sec'y of Health & Human Servs.*, 139 Fed Cl. 238, 250 (2018) (finding that the special master "abused his discretion by failing to independently review the petitioner's counsel's motion for attorneys' fees and reimbursement of case costs to determine if the requested fees and costs were reasonable.").  Furthermore, "the Special Master [has] no additional obligation to warn petitioners that he might go beyond the particularized list of respondent's challenges." *Duncan,* 2008 WL 4743493.

## IV.    Excessive Travel Time and Expenses in This Case

As an initial matter, I note that a significant portion of the costs claimed by petitioner's counsel include costs incurred during travel, specifically to meet with the expert, Dr. Burks.  Petitioner's counsel indicates that one attorney working on this case, Juan F. Vasquez, Jr., traveled to Florida to meet with Dr. Burks on three separate occasions, while Dr. Burks traveled to Texas on one additional occasion to meet with petitioner's counsel and provide an in-person evaluation for petitioner.  The requested travel expenses are as follows:

- **October 20-23, 2017** (Miami, FL): $842.60 airfare; $762.89 hotel; $30 parking/tolls; $320.31 meals.
  - **Trip total: $1,955.80**

- **December 26-31, 2018** (Miami, FL): $855.60 airfare; $133.12 meals.
  - **Trip total: $988.72**

- **March 14-16, 2019** (Miami, FL): $1,054.58 hotel; $19.75 parking/tolls; $121.94 meals.
  - **Trip total: $1,196.27**

- **April 4-6, 2019** (Houston, TX): **$321.74** meals

In addition to these costs, Mr. Vasquez billed 11.5 hours from October 20-23, 2017; 1.25 hours from December 26-31, 2018; 3.75 hours from March 14-16, 2019; and

3 hours from April 4-6, 2019.  (ECF No. 24-4, pp. 5-10.)  These hours are devoted to preparing for these expert meetings and conferring with petitioner's expert.  Counsel of record, David N. Calvillo, billed 8.75 hours on April 5, 2019, preparing for and attending Dr. Burks's meeting with petitioner.  (ECF No. 24-4, p. 11.)  Of the hours Dr. Burks billed in this case, eight hours were attributable to "4/5-4/6: Houston Trip: Strategy with Juan/David. Final review of medical records and government document . . . Neurological evaluation on Mrs. Smith with medical report . . . Post patient case evaluation, Strategy planning."  (ECF No. 32-1, p. 11.)  (All involved seem to have refrained from billing actual travel time as a matter of billing judgment.)

Petitioner's counsel indicates that "[t]he travel costs presented in this request should be considered a part of the expert costs.  The costs reflected herein for hotel and airfare was incurred specifically to personally confer with Dr. Burks on a time-sensitive basis.  The appointment attended to by Mr. Vasquez involved a review of the medical records, an explanation of the National Vaccine Injury Compensation Program and an explanation of the type of report required in this instance."  (ECF No. 24, p. 6.) However, this amount of travel in a case of this nature is unusual. In the context of this case, given the stage of the case, and the facts alleged, the costs incurred for these in-person meetings both in hours billed and travel expenses are excessive and out of proportion to the claim presented.

"One test of the 'reasonableness' of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay for his attorney for Vaccine Act representation would be willing to pay for such expenditure."  *Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2016 WL 4729530 (Fed. Cl. Spec. Mstr. Aug. 16, 2016) (citing *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319819, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009); *Sabella v. Sec'y of Health & Human Servs.*, No. 02-1627, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008)).  The Federal Circuit has ruled that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."  *Saxton*, 3 F.3d at 1521.  Additionally, counsel have an obligation to monitor expert fees and costs.  *Simon v. Sec'y of Health & Human Servs.*, No. 05-941V, 2008 WL 623833, at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2008).

I have reviewed Dr. Burks's reports filed in this case.  Nothing presented in either of these reports reflects any basis for in-person meeting.  Dr. Burks's first report filed with the petition was a single page, included only a perfunctory explanation of petitioner's theory of causation, and evidenced no specific understanding of the legal requirements of this program.[3]  (Ex. 5; ECF No. 1-7.)  Nor should a qualified neuro-immunologist require assistance in reviewing a patient's prior medical history. Moreover, the need for a more detailed follow up expert report further suggests that

---

[3] One could potentially argue that an in-person meeting could have benefits reaching beyond the four corners of Dr. Burks's reports.  Namely, early expert preparation could provide more efficient hearing preparation in the future.  In this case, however, Dr. Burks retired and withdrew from the case after filing his supplemental report in April of 2019.  (ECF No. 27, p. 2.)  Petitioner is now proceeding with a different expert.   There has been no representation made that Dr. Burks's retirement was unexpected.

these in-person meetings were not reasonable or useful.[4]  Notable in that regard is my discussion below regarding Mr. Vasquez's role in the case.  Unlike counsel of record, Mr. Calvillo, Mr. Vasquez is a tax lawyer rather than a personal injury lawyer and has offered no indication he has any experience working with medical experts.  Also noteworthy, at the time of Mr. Vasquez's December 2018 trip to Miami, petitioner had already filed her initial expert report from Dr. Burks and respondent had not yet filed his Rule 4 report explaining the basis for his defense of this case.  (ECF No. 16.)

Moreover, while petitioner's counsel provided receipts for flights and hotel for Miami, Florida, during the months of October 2017 and December 2018, Dr. Burks's invoice does not reflect any meeting with petitioner's counsel in October or December of any year.  (ECF No. 32-1, p. 11.)  Petitioner requests reimbursement for two hotel rooms, food, and tolls in Miami during March 2019; however, Dr. Burks' invoice only notes "extensive analysis of medical records" for March 15th through 29th of an unknown year.  (*Id*.)

Additionally, petitioner has likewise failed to substantiated why it was necessary for Dr. Burks to travel to Houston to visit petitioner in person. By the time of this trip, respondent had filed his Rule 4 report which acknowledged petitioner's transverse myelitis diagnosis and confirmed that the case was being defended with regard to the question of whether petitioner's vaccination was the cause of that transverse myelitis. (ECF No. 16.) Accordingly, travel to Houston for an in-person exam of petitioner was not reasonable as her current condition or diagnosis was not then at issue in the case. Despite this, counsel's billing records reflect that Dr. Burks's meeting with petitioner was with regard to her diagnosis.  (ECF No. 24-4, p. 10.)

In light of the above, I find that none of these requested travel costs, totaling $4,462.53, are reimbursable.[5]  Moreover, I reduce the above identified hours preparing for and attending these expert conferral sessions by 50%.

---

[4] In the application for interim attorneys' fees and costs, petitioner's counsel states that "[p]etitioner has been required to produce multiple expert reports from its renowned neurologist presumably to precisely delineate the diagnostic link between the influenza vaccination administered to Dorothy Smith and the resulting onset of her debilitating symptoms diagnosed as Transverse Myelitis (TM). The temporal nexus and the familiar symptoms exist but yet additional reports continue to be requested." (ECF No. 24, p. 2.) This passage betrays counsel's unfamiliarity with this program.  It is well established that in a cause-in-fact case such as this, a temporal association alone is not sufficient to demonstrate causation. *E.g., Grant v. Sec'y of Health & Human Servs.*, 956 Fed.2d 1144, 1148 (Fed. Cir. 1992).  Petitioner later filed a supplemental report from Dr. Burks to address the point raised in respondent's report that petitioner had experienced an upper respiratory infection prior to onset of her transverse myelitis. In this program, respondent bears the burden of demonstrating the presence of any alternative cause only if and when petitioner satisfies his *prima facie* burden.  § 300aa-13(a)(1)(B); *Walther v. Sec'y of Health & Human Servs.*, 485 F.3d 1146, 1150 (Fed. Cir. 2007).  However, respondent may present evidence to demonstrate the inadequacy of petitioner's evidence supporting his case in chief.  *de Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1353 (Fed. Cir. 2008).  These are precisely the types of issues that a meeting between counsel and expert would be expected to anticipate and seek to preempt.

[5] Since I have concluded that the travel in this case was unreasonably undertaken on the whole, it was not necessary to reach the reasonableness of individual expenditures.  I do note, however, that the airline confirmations indicate that Mr. Vasquez flew a portion of his trips in "Delta Comfort+."  (ECF No. 32-1, pp.

## V.      Lodestar Analysis

### a.  Hourly Rate

A reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Avera*, 515 F.3d at 1348 (citation and quotation omitted).  In *Avera*, the Federal Circuit found that in Vaccine Act cases, the special master should use the rate prevailing in the forum, *i.e.*, Washington, D.C., in determining an award of attorneys' fees unless the bulk of the work is completed outside of the forum and there is a "very significant difference" between the forum hourly rate and the local hourly rate.  515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Spec. Serv. Dist. v. U.S. Envtl. Prot. Agency,* 169 F.3d 755 (D.C. Cir. 1999)).

Petitioner's counsel practices in Houston, Texas.  Houston attorneys have previously been awarded forum rates.  *See Hudson v. Sec'y of Health & Human Servs*., No. 15–114V, 2016 WL 3571709, at *3 (Fed. Cl. Spec. Mstr. June 3, 2016); *Johnson v. Sec'y of Health & Human Servs*., No. 14-254V, 2017 WL 2927307, at *3 (Fed. Cl. June 6, 2017); *Garrett v. Sec'y of Health & Human Servs*., No. 14–17V, 2014 WL 6237497, at *7 (Fed. Cl. Spec. Mstr. Oct. 27, 2014).

For attorneys receiving forum rates, the decision in *McCulloch v. Secretary of Health & Human Services* provides a further framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney.[6]  No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  The Office of Special Masters has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016, 2017, 2018, and 2019 can be accessed online.[7]

---

15-18).  It is well established that the Vaccine Program does not compensate petitioners for upgraded methods of travel.  *See Davis v. Sec'y of Health & Human Servs*., No. 16-774V, 2019 WL 2281748, at *2 (Fed. Cl. Spec. Mstr. Apr. 2, 2019); *Reichert v. Sec'y of Health & Human Servs*., No. 16-697V, 2018 WL 3989429, at *4 (Fed. Cl. Spec. Mstr. Jun. 20, 2018); *Tetlock v. Sec'y of Health & Human Servs*., No. 10-56V, 2017 WL 5664257, at *6 (Fed. Cl. Spec. Mstr. Nov. 1, 2017).

[6] After discussing the potential approaches to setting a forum rate and reviewing cases and material from both within and without the Vaccine Program, the special master concluded that the following factors should be considered: (1) the prevailing rate for comparable legal work in Washington, DC; (2) the prevailing rate for cases in the Vaccine Program; (3) the experience of the attorney(s) in question within the Vaccine Program; (4) the overall legal experience of the attorney(s); (5) the quality of work performed by the attorney(s) in vaccine cases; and (6) the reputation of the attorney(s) in the legal community and community at large.  *McCulloch,* 2015 WL 5634323, at *17.

[7] Each of the Fee Schedules for 2015 through 2019 can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are derived from the decision in *McCulloch*, 2015 WL 5634323. The schedules for 2017, 2018, and 2019 are adjusted for inflation using the Producer Price Index for Offices of Lawyers ("PPI-OL").

Petitioner requests compensation for Mr. Calvillo at $425 per hour for work performed in 2017, 2018 and 2019.[8]  (ECF No. 24-4, p. 12.)  Although he has no prior experience litigating in this program, Mr. Calvillo is a civil trial lawyer with prior experience in personal injury and wrongful death litigation.  He has been in active practice since 1989 and is acting as counsel of record in this case.  (ECF No. 24-2.)  Under the Attorneys' Forum Hourly Rate Fee Schedule, the forum hourly rate range for counsel with 20-30 years of experience in practice is $358-$424 for 2017, $370-$439 for 2018, and $378-$448 for 2019.  Balancing his overall legal experience and his inexperience in this program, I find that a reasonable rate for Mr. Calvillo is $391 per hour for 2017, $405 per hour for 2018, and $413 per hour for 2019.  *See McCulloch*, 2015 WL 5634323, at *17 (noting that "[t]he higher end of the range should be awarded to those with significant Vaccine Program experience who perform high quality legal work in vaccine cases").

Petitioner requests compensation for Mr. Vasquez at the rate of $595 for work performed in 2017, $625 for work performed in 2018, and $650 for for work performed in 2019.[9]  Mr. Vasquez has had approximately 17 years of practice.  (ECF 24-3, p. 1.)  Like Mr. Calvillo, Mr. Vasquez lacks any prior experience in the vaccine program.  Although petitioner requests an upward departure from typical attorney rates due to Mr. Vasquez's national reputation in administrative matters (ECF No. 24, p. 4), Mr. Vasquez's submitted biography indicates that his prior experience relates exclusively to tax planning and controversy.  He has not indicated any familiarity with matters involving vaccine injury litigation or even injury litigation more generally.  Whether addressing forum or local rates, attorney rates in this program represent prevailing rates "for *similar services* by lawyers of reasonably comparable skills, experience, and reputation."  *Avera*, 515 F.3d at 1348 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (emphasis added)).  Under the Attorneys' Forum Hourly Rate Fee Schedule, the forum hourly rate range for counsel with 11-19 years is $307-$383 for 2017, $317-$396 for 2018, and $324-$405 for 2019.  Balancing his overall legal experience and his inexperience in this program, I find that a reasonable rate for Mr. Vasquez is $345 per hour for 2017, $357 for 2018, and $365 for 2019.  *See McCulloch, supra*.

The paralegal rates requested by petitioner's counsel also exceed the forum rates typically allowed in this program.  Specifically, Ms. Villegas has billed at a rate of $215 per hour for work mostly completed in 2017.  Her rate is reduced to $148 to conform to the Attorneys' Forum Hourly Rate Fee Schedule for 2017.  Mr. Cain billed $215 per hour for work performed in 2018 and $230 per hour for work performed in 2019.  (ECF No. 24-4, p. 13.)  The maximum paralegal rates for these years under the Attorneys' Forum Hourly Rate Fee Schedule are $153 and $156 respectively.  Mr. Cain's rates are reduced accordingly.

---

[8] However, without explanation, Mr. Calvillo billed about two hours in 2017 at a lower rate of $395 per hour.  (ECF No. 24-4, pp. 3, 13.)

[9] In fact, Mr. Vasquez increased his rate as of his billing on December 29, 2018.  (ECF No. 24-4, p. 9.)  He billed 1.25 hours at the end of 2018 at what would become his 2019 rate.  (*Id.*)

A third staff member, Theresa Adkins, also worked on this case.  (ECF No. 24-4, p. 12.)  She billed 3.85 hours in 2017 and 1 hour in 2018 at a rate of $195 per hour and is identified as "other legal staff."  (*Id.*)  However, unlike other staff, the basis for her requested rate was not discussed.  (ECF No. 24-1.)  In an informal communication to chambers, petitioner's counsel represented that the work Ms. Adkins billed in this case was paralegal in nature.  Upon my review of the billing records, I agree. Accordingly, consistent with the above, her hourly rate will be reduced to $148 for 2017 and $153 for 2018.

### b.  Hours Expended

Special masters may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991), *rev'd on other grounds and aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993).  Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing.  *See Ericzon v. Sec'y of Health & Human Servs.*, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016).  Petitioner's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983).

After reviewing the billing records, counsel included entries that I find to be excessive and unreasonable, along with some entries that are too vague to assess their reasonableness.  This court has consistently held that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable.  *Bell v. Sec'y of Health & Human Servs.,* 18 Cl. Ct. 751, 760 (1989).

Upon my review, Mr. Calvillo's billing is reasonable overall.  However, he has requested 6.5 hours for time spent in 2017 and 4 hours for time spent in 2018 researching the vaccine program.[10]  (ECF No. 24-4.)  This court has previously held that "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program."  *Matthews v. Sec'y of Health & Human Servs.*, No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016).  In *Calise v. Secretary of*

---

[10] These entries are as follows (notably, some of these entries include block billing where otherwise allowable tasks have also been included):

| 1/8/2017  | 4.25 |
|-----------|------|
| 1/10/2017 | 2.25 |
| 1/4/2018  | 1.25 |
| 1/7/2018  | 2.75 |

*Health & Human Services*, the special master reduced billings for "research into the elementary principles of vaccine litigation," explaining that, "basic education [is] not compensable under the Program."  No. 08–865V, 2011 WL 2444810, at *5 (Fed. Cl. Spec. Mstr. June 13, 2011).  On the other hand, in the interest of fostering good practices, some special masters have allowed a very limited number of hours for educational purposes.  *Tison v. Sec'y of Health & Human Servs.*, No. 89-43-V, 1990 WL 293369, at *2 (Cl. Ct. May 25, 1990) (reducing attorneys' fees after finding petitioner spent an excessive amount of time researching and reviewing the statute and legislative history.)  In this case, I find a reduction of 4 hours from Mr. Calvillo's 2017 billing and 4 hours from his 2018 billing to be appropriate.

More significant reductions are required with respect to Mr. Vasquez's billing.  On sixteen separate occasions, and for 5.5 hours, Mr. Vasquez billed for conferral without describing who he was conferring with or providing detail regarding what he was conferring about.[11]  (ECF No. 24-4.)  These billings are impermissibly vague and therefore not reasonable.  Accordingly, Mr. Vasquez's billings are reduced by 0.75 hours for 2017, 0.75 hours for 2018, and 3.75 hours for 2019.

Additionally, Mr. Vasquez included entries which constitute block billing.  The Vaccine Program's Guidelines for Practice explain that "[e]ach task should have its own line entry indicating the amount of time spent on that task. Lumping together several unrelated tasks in the same time entry frustrates the court's ability to assess the

---

[11] These entries are as follows:

| | |
|---|---|
| 11/3/2017 | 0.25 |
| 11/6/2017 | 0.25 |
| 11/8/2017 | 0.25 |
| 11/9/2018 | 0.5 |
| 1/22/2018 | 0.25 |
| 3/8/2019 | 0.25 |
| 3/11/2019 | 0.25 |
| 3/13/2019 | 0.75 |
| 4/3/2019 | 0.75 |
| 4/17/2019 | 0.5 |
| 4/30/2019 | 0.25 |
| 5/7/2019 | 0.25 |
| 5/31/2019 | 0.25 |
| 6/20/2019 | 0.25 |
| 7/30/2019 | 0.25 |
| 7/31/2019 | 0.25 |

reasonableness of the request."[12]  In his billing, Mr. Vasquez includes 15 hours of block billing which include, among the multiple tasks listed, entries of unspecified conferral similar to those disallowed above.[13]  Mr. Vasquez's billing records do not provide sufficient detail to determine whether his hours billed were reasonable, therefore I will compensate Mr. Vasquez for only 50% of the hours for which the billing entries are both vague and the billing entry constitutes block billing.  *Mostovoy v. Sec'y of Health & Human Servs.*, No. 02-10V, 2016 WL 720969, at *6 (Fed. Cl. Feb. 4, 2016.)  Accordingly, Mr. Vasquez's billings are reduced by 4 hours for 2017, 0.625 hours for 2018, and 2.875 hours for 2019.

I further stress that, notwithstanding his travel to meet with experts, Mr. Vasquez's involvement in this case is not well substantiated.  In this program assigning multiple attorneys to work on a case is disfavored due to the inefficiencies created in what are not typically procedurally complex cases.  See *Sabella*, 86 Fed. Cl. at 214–15; *Austin v. Sec'y of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan. 31, 2013); *Soto v. Sec'y of Health & Human Servs.*, No. 09–897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011); *Carcamo v. Sec'y of Health & Human Servs.*, No. 97–483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011).  This is especially notable in this case, because the allegations presented are not complicated by the standards of this program and petitioner's counsel of record is a seasoned trial attorney unlikely to require supervision.  Moreover, Mr. Vasquez has no more experience in this program than does Mr. Calvillo and also lacks Mr. Calvillo's prior experience in injury litigation.  Additionally, many if not most, of his

---

[12] Guidelines for Practice Under the National Vaccine Injury Compensation Program ("Guidelines for Practice") at 70 (last revised August 22, 2019) found at http://www.cofc.uscourts.gov/vaccine-guidelines.

[13] These entries are as follows:

| | |
|---|---|
| 10/20/2017 | 3 |
| 10/23/2017 | 2.25 |
| 10/25/2017 | 0.75 |
| 10/26/2017 | 1 |
| 10/27/2017 | 0.5 |
| 11/13/2017 | 0.5 |
| 1/24/2018 | 0.5 |
| 1/30/2018 | 0.5 |
| 3/7/2018 | 0.25 |
| 3/6/2019 | 0.5 |
| 3/19/2019 | 0.75 |
| 3/28/2019 | 0.75 |
| 4/5/2019 | 1.75 |
| 4/6/2019 | 0.75 |
| 4/7/2019 | 1.25 |

billing records lack sufficient specificity to evidence the nature of Mr. Vasquez's role in the case or determine how efforts were coordinated between the attorneys. Accordingly, in addition to the specific reductions above, I reduce Mr. Vasquez's remaining hours in this case by a further 25%.

Finally, this program does not pay for tasks which are secretarial in nature. *Guy v. Sec'y of Health & Human Servs.,* 38 Fed. Cl. 403, 408 (1997) (denying compensation for office overhead including office supplies, administrative or clerical staff, and secretarial support.)  Counsel requests 1.5 hours for work done by an administrative assistant, "LKR."  These non-reimbursable administrative fees total $187.50. However, I find no cause to reduce the paralegal hours billed in this case.

## VI.     Reasonable Costs

On December 18, 2019, petitioner filed a Supplemental Motion for Attorney Fees and Costs including itemized receipts for their requested costs.  (ECF No. 32.) Attorneys' costs are subject to the same reasonableness requirements as attorneys' fees.  *See Perriera v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375.

Petitioner's counsel requested a total of $26,976.12 in costs, $22,150.00 of which constitute expert and consultation fees.  (ECF No. 32.)  The bulk of that amount represents fees by Dr. Jack Burks, a physician with qualifications in neurology and immunology. Dr. Burks charged an hourly rate of $650 for 25 hours for a total of $16,250.00.  (ECF No. 32-1, p. 11.)  Dr. Burks also charges a minimum review and report fee of $5,000.00 (for which he did not provide itemized billing), bringing his total bill to $21,250.00.  (*Id*. at 10.)  His hourly rate has not previously been addressed in this program.

### a.  Reasonable Expert Fees

Reasonable expert costs are calculated using the same lodestar method as is used when calculating attorneys' fees. *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 1838979, at *37 (Fed. Cl. Spec. Mstr. June 12, 2009).  Regarding expert fees, "[t]he question is not whether [the expert] expended the numbers of hours claimed, but whether it was necessary or reasonable for him to do so."  *Baker v. Sec'y of Health & Human Servs.*, No. 99-653V, 2005 WL 6122529, at *4 (Fed. Cl. June 21, 2005) (quoting *Wasson v. Sec'y of Health & Human Servs.*, No. 90-208V,1991 WL 135015, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded*, 24. Cl. Ct. 482, 483 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993)).  An expert retained by the petitioner in the Vaccine Program will only be compensated at a reasonable hourly rate, and the petitioners have the burden of demonstrating that the expert costs incurred were reasonable.  *Ceballos v. Sec'y of Health & Human Servs.*, No. 99–97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004).

Many Vaccine Program cases provide a framework for determining the appropriate rate for experts in this program at a range between $250 and $500 an hour.

*See O'Neill v. Sec'y of Health & Human Servs.,* No. 08–243V, 2015 WL 2399211, at \*17 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (awarding an hourly rate of $400 to an expert in neurology); *Dingle v. Sec'y of Health & Human Servs.*, No. 08–579V, 2014 WL 630473, at \*8 (Fed. Cl. Spec. Mstr. Jan. 24, 2014) (expert did not have "specialized knowledge and experience" in the case to justify his requested hourly rate of $500 and, accordingly, rate was reduced to $400 per hour); *Allen v. Sec'y of Health & Human Servs.*, No. 11–051V, 2013 WL 5229796, at \*2 (Fed. Cl. Spec. Mstr. Aug. 23, 2013) (approving a rate of $500 per hour for an expert in neurology and immunology and who also had expertise in a pertinent area to the issue in the case); *Chen Bou v. Sec'y of Health & Human Servs.,* No. 04-1329V, 2007 WL 924495, at \*10, \*16 (Fed. Cl. Spec. Mstr. Mar. 9, 2007) (awarding an expert a rate of $350 per hour based in part on his poor performance in testifying at hearing, but noting that "[b]ased upon the information submitted [ ], with the appropriate set of facts the undersigned would have no issue with awarding the $500 requested by petitioner")).  Notably, these rates include experts in areas of study similar to Dr. Burks.  *E.g.*, *Allen, supra*.

The previously-accepted rate of $500 per hour does not constitute an absolute ceiling on the reimbursement of reasonable expert costs.  Rather, the reasonableness of any given expert's hourly rate will be based on individual factors such as credentials, particular expertise, efficiency, and effectiveness.  However, petitioner has not established $650 as a reasonable hourly rate for Dr. Burks.  Dr. Burks's biography confirms that his qualifications and experience are relevant to the facts of this case; however, especially in light of his inexperience in the program, the hours expended in this case, and his work product, petitioner has not provided a compelling reason to allow a higher than usual rate of reimbursement.[14]  Additionally, while Dr. Burks worked over 25 hours in this case for two reports, petitioner's current expert, Dr. Levy, has estimated that only two to three hours are necessary to review this matter and draft a report, suggesting that Dr. Burks may be less efficient.  Nonetheless, given Dr. Burks's experience in the field of neurology and immunology, I find that $500 per hour is an appropriate hourly rate for Dr. Burks.

Dr. Burks's billing agreement indicates that his fees "will be paid with an initial minimum review and report fee of $5,000.00, payment of which will be due upon the execution of this agreement. Thereafter, once the initial payment is utilized, fee statement for my services will be invoiced on a schedule determined by my schedule, and as approved by you."  (ECF No. 32-1, p. 10.)  Although the agreement referenced an hourly rate of $750 per hour, the invoice reflects that an hourly rate of $650 per hour was actually charged.  (*Id.* at 11.)  At a rate of $650 per hour, Dr. Burks's initial retainer would account for approximately 7.7 hours of work.  Accordingly, for purposes of this decision, Dr. Burks's bill is understood to represent 32.7 hours of work billed at $650 per

---

[14] Though now reportedly retired, Dr. Burks indicated, as of the submission of his initial report, that he was a clinical professor of neurology at Florida International University and Nova Southeastern University. (ECF No. 1-8.) He noted his prior fellowship at Johns Hopkins University School of Medicine in neuroimmunology and also explained that his career has focused on multiple sclerosis. He was a chief medical consultant to the MS Association of America. (*Id.*) He was then licensed to practice medicine in the state of Florida through January 31, 2018.  (*Id.* at 2.)

hour.  However, as describe in Section IV, above, I disallowed four hours of billing from
Dr. Burks's invoice, resulting in total hours of 28.7.

### b. Miscellaneous costs

Petitioner's counsel also requested other miscellaneous fees including
"professional fees" paid to "JLE Ltd FR" ($34.99) and "Taylor & Francis FL" ($54.00).
(ECF No. 24-4, p. 12; ECF No. 32-1, pp. 31-32.)  The purpose of these charges cannot
be determined on their face and they have not otherwise been explained.  Accordingly,
they will not be reimbursed.  Additionally, Mr. Calvillo seeks reimbursement of $54.24
for a "working meal" identified as a meeting with his client occurring May 31, 2017. (ECF
No. 24-4, p. 12.)  Absent circumstances such as necessary hearing travel, I do not find
meal reimbursement to be a reasonable expense chargeable to this program.
Moreover, the billing records submitted indicate that no attorney time was billed on that
date. (ECF No. 24-4, p. 4.)  The total of these miscellaneous expenses is $143.23.

## VII.  Calculating the Interim Award of Attorneys' Fees and Costs

In light of all of the above, attorneys' fees are calculated as follows:

**Mr. Calvillo**:

|  | 2017 | $391 per hour | (36 hours)[15] | $14,076.00 |
|---|---|---|---|---|
|  | 2018 | $405 per hour | (16.25 hours)[16] | $6,581.25 |
|  | 2019 | $413 per hour | (42.375 hours)[17] | $17,500.88 |
|  | **Total** |  |  | **$38,158.13** |

**Mr. Vasquez:**

|  | 2017 | $345 per hour | (6 hours)[18] | $2,070.00 |
|---|---|---|---|---|
|  | 2018 | $357 per hour | (2.25 hours)[19] | $803.25 |

---

[15] For 2017, 40 hours were billed. A reduction of 4 hours was made.

[16] For 2018 20.25 hours were billed. A reduction of 4 hours was made.

[17] For 2019, 46.75 hours were billed. A reduction of 4.375 hours was made.

[18] For 2017, 16.5 hours were billed. Reductions were made as follows: 0.75 hours, 4 hours, and 5.75 hours.

[19] For 2018, 4.25 hours were billed. Reductions were made as follows: 0.75 hours, 0.625 hours, and 0.625 hours.

| 2019 | $365 per hour | (5.5 hours)[20] | $2,007.50 |
| Total | | | $4,880.75 |
| **Less 25%** | | | **$3,660.57** |

**Support Staff**:

| Villegas | $148 per hour | (27 hours) | $3,996.00 |
| Cain (2018) | $153 per hour | (1.3 hours) | $198.90 |
| Cain (2019) | $156 per hour | (4.7 hours) | $733.20 |
| Adkins (2017) | $148 per hour | (3.85 hours) | $569.80 |
| Adkins (2018) | $153 per hour | (1 hour) | $153.00 |
| Ramirez | n/a | n/a | $0.00 |
| **Total** | | | **$5,650.90** |

In addition to the fees delineated above, petitioner requested costs amounting to $27,522.55. Of this amount, $21,250.00 represented the costs associated with the work of Dr. Burks. For the reasons discussed in Section VI(a) above, I reduce that amount to $14,350.00 ($500 per hour x 28.7 hours), a reduction of $6,900.00. Additionally, in Section IV, I identified $4,462.53 in travel expenses that will not be reimbursed. And, finally, in Section VI(b), I identified a further $143.23 in other expenses that will not be reimbursed. Accordingly, petitioner is awarded costs as follows:

Requested: $27,522.55
(less)   (-6,900.00)
      (-4,462.53)
      (-143.23)
**Awarded:** **$16,016.79**

Thus, the total amount awarded in reasonable interim attorneys' fees and costs is $63,486.39, representing $47,469.60 in attorneys' fees and $16,016.79 in costs.

---

[20] For 2019, 15.5 hours were billed. Reductions were made as follows: 3.75 hours, 2.875 hours, and 3.375 hours.

## VIII.    Conclusion

In light of the above, petitioner's application for interim attorneys' fees and costs is **GRANTED** with reductions and:

> **Petitioner is awarded a lump sum in the amount of $63,486.39, representing reimbursement for interim attorneys' fees and costs, in the form of a check made payable to petitioner and her counsel, David Neal Calvillo, Esq.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[21]

**IT IS SO ORDERED.**

<u>**s/Daniel T. Horner**</u>
Daniel T. Horner
Special Master

---

[21] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review.  Vaccine Rule 11(a).